BREAUX, C. J.
Plaintiff prays for judgment in the sum of $3,000 for the breaking of a leg.
Plaintiff was a section hand in the employ of the defendant company.
On the 15th day of May, 1909, at about the hour of 3 o’clock p. m., plaintiff was at work for the defendant, being one of a number of section hands who were engaged in rerailing about 12 cars that had derailed from the track of defendant’s road near Red Oak Station in Red River parish.
The foreman had charge of the working party, and a conductor of one of the trains was present, assisting in directing the work of the wrecking crew.
Temporary works were rigged up in order to enable the crew to pull the wrecked cars back to their respective places on the track, laid on the railroad embankment, which was high and steep at the place of the derailment.
The temporary work, performing the part of levers, consisted of a wire cable, made fast to a tree by chains, which were made to encircle the tree twice, or a larger number of circles.
From the tree, the cable ran to a snatch block, which was near the foot of the railroad dump. The cable ran through the pulleys in the snatch block. From the block it was laid across the track and was hitched to the derailed cars on the opposite side of the track.
The tree stood about 50 feet from the block.
The chain or cable was spliced or pieced in order to make it of sufficient length. At the end of the chain, near the tree, there was a large hook used in fastening the cable to the tree. It was placed. over the encircled cable around the tree, not by inserting the end of the hook to one of the links of the chain, but- by fastening it over and to the first circle of the chain nearest to the ground.
The engine with cable attached was at the moment of starting. The foreman ordered the plaintiff to go to the block to prevent its twisting around, also to see to the kinks in the chain, as the cable was made taut by the pulling engine. All the other hands had left the place of danger and were on the dump out of the way of the flying chains.
Plaintiff obeyed the foreman’s order, attended as well as he could to the slack in the chain, and saw to the position of the block, and, in accordance with order, sought to get out of the way by running from the block.
tie had made a few steps when the end of the flying chain struck him and broke his leg.
The dangerous chain, after the power was put on, was loosened from its mooring around the tree by the opening of the hook, which fastened it to the chain circled around the tree.
We have found no contradiction to plaintiff’s oath that he ran as soon as the slack was out.
The cause of the injury suffered was the iron hook opening, releasing its grasp.
The weight upon the cable and its fastening was great. It could not have been otherwise. As soon as the engine, to which the cable was attached, began to move any part of the apparatus taxed beyond its capacity would break; it was inevitable.
All the hands and other employes, to escape danger, had repaired to the top of the *109 dump except one, the plaintiff, who was sent below the dump to signal to the employes above.
He may have gone dangerously near. He was not very near at the moment that he was struck. Had he been still further away than he was, it is quite probable that he would not have been struck at all.
He was not negligent because he had not escaped further from the point of danger.
Before he was struck, he was not in a concealed place. It. would have been an easy matter on the part of those on the dump to have notified him to be careful.
There was necessity at that moment for particular watchfulness on the part of the foreman.
The foreman has testified clearly upon the subject and stated that, if the plaintiff had been standing back from the pulley where he should have been, he could have gotten out of the way, and that he could have seen the snatch block as well. He adds:
“But I guess he thought the closer he could get to the latter he would satisfy me. I had not instructed him to get at any particular distance from it. I only said to him to go where he could see that there were no kinks in the cable. That was all that I wanted, and that was all that I told him.”
The foreman also testified in regard to the hook; that there was too much strain upon it. “It was just a little above its capacity. The strain was too much.”
This is evidence direct that plaintiff acted in accordance with the orders of the foreman.
In argument, the contention is that he acted voluntarily.
But that contention is not sustained by the facts, as made evident by the foregoing.
Going further into the evidence, we find that a farmer residing near by (Mr. Garter) testified that this foreman complained in conversation with him that the material of the wrecking outfit was poor.
This is the statement of a disinterested witness.
If it be true, it affords additional grounds why the foreman should have been more careful.
The same witness swore that the hook straightened, and it must be inferred from that fact that it was made from .inferior iron.
No regular inspection was ever made of this outfit, including the hook.
The following are questions and answers by this witness in regard to this outfit, and particularly the worthless hook:
“Q. That is your reason for saying that it was bad stuff because it straightened in the pull ?
“A. Well, I was not there at the pull; but that was what Mr. Barnett said when I came up there.”
This Mr. Barnett was the foreman in charge.
It is true that he denied that, he had made that statement.
The witness was not in any way interested.
This witness further testified:
“Q. There was not anything in the rusty appearance of the hook to show you that "it was shoddy, was there?
“A. Well, it looked like it was soft stuff to me; but, of course, I am no blacksmith.
“Q. Well, did the other stuff look soft too, or just the hook and chain?
“A. Well, it may be that it broke because the hook straightened, but it all looked the same to me.”
The case was tried before the judge of the district court without a jury, who decided for plaintiff.
He saw and heard the witnesses, and his opinion, for that reason, is entitled to due weight.
One or two of the witnesses for defendant were under the impression that the plaintiff might have escaped if he had run up the embankment to get to a place of safety, instead of running along the railroad dump.
The foreman also was of that opinion, *111 but he added, fairly enough, that plaintiff, in running in the direction that he did, ran in the direction that he (the foreman) would have run had he been in plaintiff’s place.
Something also was said about bushes and briers that intercepted the view from the bump to the place where plaintiff was standing.
.Having reviewed the facts, we will 'for a moment take up questions of law.
4. It is true, as contended by defendant, after citing several decisions upon the subject, that the burden of proof is on the plaintiff to show negligence of defendant.
In our opinion plaintiff met that requirement and proved sufficiently that he was hurt because of the deficiency of part of the outfit, and because it had not been sufficiently inspected, and because he had been left out on the outside without sufficient instruction as to the danger.
[1] The common laborer ought to receive some attention, when sent to a place of danger. He should be given some little warning.
While it is true that the servant must be held to assume the ordinary risks and dangers of his employment, there is some limit to that risk, particularly when the laborer acts under the directions of the master.
The ordinary laborer generally looks up to the skill and superior knowledge of his employer, and, if he obeys him, he cannot be held to assume risks to which he would be held under other circumstances.
But, let us go back a moment and consider briefly the facts to the end of applying the principle of law.
Defendant was rerailing a heavy freight car, weighing, the evidence shows, some 40,-000 pounds. It was necessary to pull its heavy weight to the top of the dump.
A temporary apparatus had been devised for pulling it up.
[3] At the moment of greatest danger, when the engine began to pull, every one sought shelter. The foreman, from his point of safety, ordered the laborer to the point of danger in order that he might from that point give necessary signals.
We have not found, after examining the testimony, that further attention was given to the laborer in the exposed position in which he was.
The outfit was not in first-class condition. If it had been, it would not have broken as it did.
The laborer was not at fault.
The employer was not as diligent as he should have been in selecting material for the outfit and was not sufficiently careful in directing the servant while in danger.
[2] The laborer is worthy of his hire, and furthermore, to some little consideration and protection when he is faithful in the discharge of his allotted task.
This must not be carried to an excess, it is true. But it is not expecting too much that the'master shall, through his foreman, say to the laborers, “Don’t go too near to the cable and the snatch block, for, when the whole power will be on, there is no telling what may happen.”
We have arrived at the conclusion to affirm the judgment.
Plaintiff filed a-petition on appeal asking for an increase of the damages.
Without going specially into details, after having read the testimony, we hold that the amount is in proportion to the damages allowed in such cases. We are of opinion that justice has been done.
Por reasons stated, the judgment appealed from is affirmed.